UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

Jane Doe,

Plaintiff,

v.

Friendship Place;

Jean-Michel Giraud;

Chris Pitocichelli;

Jonathan Whitted;

Rebekah Koen;

Lindsey Miller;

Sahirah Hobes;

Philadelphia Insurance Companies,

Defendants.

Civil Action No. 1:25-cv-00727-UNA

---

**EVIDENCE COVER SHEET**

Incorporating Exhibits Including Supreme Court Rule 22 Emergency Application

This packet includes documentary exhibits and filings submitted in related legal proceedings. These materials are now formally incorporated into the record in support of the above-captioned action pending before this Court.

Included in this evidentiary packet is Plaintiff's Emergency Application submitted under Supreme Court Rule 22, which outlines overlapping claims of judicial obstruction, trauma-based retaliation, and denial of housing and medical accommodations under federal law.



RECEIVED

MAY 8 2025

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

This evidence supports Plaintiff's core allegations in this matter, including:

- Federally funded retaliation through housing and healthcare denial,

- Failure to provide disability-based accommodations,

- Public exposure of trauma-related records, and

- Ongoing constitutional injury requiring judicial intervention.

All materials are submitted under pseudonym and in good faith, with redacted and supplemental filings to follow.

**Respectfully** submitted,

Jane Doe

8 MAY 2025

M Gmail

**Correspondence from**

<No-Reply@supremecourt.go

*TH57?*

Wed, May 7 at 2:43 PM

*THis Rejection violated RULE 22, the All Writs Act, The Fifth Amendment Right to Access the Courts.*

*You knew* **SUPREME COURT OF THE UNITED STATES**
*the difference* **OFFICE OF THE CLERK**
*You chose to* **WASHINGTON, DC 20543-0001**
*OBStruct.*

May 7, 2025

*This was A rule 22 Emergency Application, Not A Petition For Certiorari. Rule 22 of the Rules of the Supreme Court Allows A Justice to Act in Emergencies before Final Judgement. 28 U.S. Code Section 1651 (All Writs Act) Authorizes extraordinary Relief when lower courts Fail to Act.*

RE: Jane Doe v. EDVA
USCA4 25-1343

Dear ▮▮▮▮▮▮:

Your application for an injunction and other relief received May 6, 2025 is herewith returned for the following reason(s):

For the injunctive relief in your case, you must first seek relief from the United States Court of Appeals for the Ninth Circuit. If you have sought that relief before a lower court, but that court has yet to rule, it would be legally premature for this Court to entertain an application for the same relief. This Court is without jurisdiction to entertain an application for a (stay/injunction) without an order from a circuit court. 28 USC 2101(f).

For other relief, you may seek review of a decision only by filing a timely petition for writ of certiorari. The papers you submitted are not construed to be a petition for writ of certiorari. Should you choose to file a petition for writ of certiorari, you must submit the petition within the 90 day time limit allowed under Rule 13 of the Rules of this Court. A Copy of the Rules of this Court and a sample petition for a writ of certiorari are enclosed.

*Certiorari Under Rule 13 only Applies to Final Judgements - Not ongoing Constitutional Harm.*

Sincerely,
Scott S. Harris, Clerk
By:

Robert Meek

<BR>For other relief, you may seek review of a decision only by filing a timely petition for writ of certiorari.  The papers you submitted are not construed to be a petition for writ of certiorari.  Should you choose to file a petition for writ of certiorari, you must submit the petition within the 90 day time limit allowed under Rule 13 of the Rules of this Court.  A Copy of the Rules of this Court and a sample petition for a writ of certiorari are enclosed." />

**SUPREME COURT OF THE UNITED STATES**

FORMAL OBJECTION TO RETURN OF EMERGENCY FILING UNDER RULE 22

AND NOTICE OF CLERK VIOLATIONS OF COURT PROCEDURE AND
CONSTITUTIONAL LAW

To:

Office of the Clerk

Supreme Court of the United States

1 First Street NE

Washington, DC 20543

From: JANE DOE, Pro Se Petitioner

RE: Objection to May 7, 2025 Return of Rule 22 Emergency Application

Filed: May 6, 2025 | Returned: May 7, 2025

Related: Fourth Circuit Docket No. 25-1343

---

## 1. The Clerk's Return Letter Violated Rule 22, Federal Law, and the Constitution

Your letter, signed by Robert Meek and dated May 7, 2025, states:

> "For the injunctive relief in your case, you must first seek relief from the United States
> Court of Appeals for the Ninth Circuit."
> — Clerk's Letter, May 7, 2025

That is false. My emergency application concerns a case pending before the Fourth Circuit (Case
No. 25-1343), and was properly addressed to Chief Justice John G. Roberts, Jr., the Circuit
Justice for the Fourth Circuit.

The suggestion that I must seek relief from the Ninth Circuit, where I have no pending litigation,
reveals that no one in your office read the application.

---

**2. You Did Not Follow Rule 22. You Bypassed It Entirely.**

Supreme Court Rule 22(b) requires that an emergency application:

> "Shall be filed with the Clerk, who shall promptly transmit it to the Justice concerned."

You did not transmit my filing to the Chief Justice.

You did not docket the emergency application.

You did not route the evidence of constitutional collapse and sealed trauma.

Instead, you mailed it back with a letter that incorrectly referenced another federal circuit, falsely stated that no appellate action had been taken, and ignored the federal exhaustion, mandamus, and injunctive pleadings attached to the application.

---

**3. What I Filed Was Not Optional—It Was Required by Law**

Your return letter also states:

> "If you have sought that relief before a lower court, but that court has yet to rule, it would be legally premature for this Court to entertain an application for the same relief."
> — Clerk's Letter, May 7, 2025

That statement is not just incorrect. It contradicts the very Supreme Court precedent I cited in the application:

> "Federal courts may issue emergency relief when state or federal officers are using their authority to violate constitutional rights."
> — Ex parte Young, 209 U.S. 123 (1908)

Your letter also ignores:

- 28 U.S.C. § 1651(a) (All Writs Act), which gives this Court jurisdiction when lower courts refuse to act;

- Ashcroft v. Iqbal, 556 U.S. 662 (2009), which permits relief where constitutional rights are being actively suppressed;

- Marbury v. Madison, 5 U.S. 137 (1803): "It is emphatically the province and duty of the judicial department to say what the law is."

I cited all of these in the Rule 22 emergency application you returned unread.

---

## 4. My Filing Was Not Procedurally Frivolous — It Was a Constitutional Lifeline

From my Emergency Application (May 6, 2025):

> "I am a disabled veteran, a rape survivor, a caregiver, and a mother of five. This declaration is not a formality—it is a lifeline. I am writing because what is happening to me and my family is not a misunderstanding. It is a constitutional failure."

And later:

> "I disclosed suicidal ideation. I filed psychiatric evaluations. I filed sworn declarations. I cited sealed trauma records. I named public officials and private contractors. And still the courts did not act."

Your office received that. And sent it back. Without review.

That is not clerical neutrality. That is constitutional abandonment.

---

## 5. Your Rejection Constitutes the Following Violations:

a. Supreme Court Rule 22(b) – Failure to transmit the emergency application to the assigned Justice.

b. 28 U.S.C. § 1651(a) – Improper denial of access to All Writs Act relief.

c. 42 U.S.C. § 12132 (ADA Title II) – Exclusion of a disabled litigant from a public judicial program.

d. Fed. R. Civ. P. 5.2(d) – Mishandling of sealed records by failing to recognize protected trauma disclosures.

e. Bounds v. Smith, 430 U.S. 817 (1977) – Violation of the constitutional right to meaningful access to courts.

f. Farmer v. Brennan, 511 U.S. 825 (1994) – Deliberate indifference to known suicide risk.

g. Tennessee v. Lane, 541 U.S. 509 (2004) – Denial of equal access to the courts for a disabled person.

**6. Let the Record Show: I Followed the Law. Your Office Broke It.**

I filed under seal.

I cited binding precedent.

I submitted evidence of active retaliation by federal judges and agencies.

Your Office—without authority—refused to transmit my request for emergency protection. You ignored the mandatory duty to forward a Rule 22 application to the Justice. You falsified jurisdiction. You erased a constitutional cry for help.

> "Do not let this be my last breath on paper. Let the record show: I asked for my life."
> — Emergency Application, May 6, 2025

**REQUEST**

I now respectfully request that:

1. My Emergency Application under Rule 22 be routed to Chief Justice John G. Roberts, Jr., without further delay or obstruction;

2. This letter be added to the record as a formal constitutional objection;

3. Any future filings submitted under seal, under ADA protection, or under emergency review be treated in accordance with federal law and Court rules.

This is not about formatting. This is about federal rights.

I am not just a petitioner.

I am a mother. A veteran. A whistleblower. And a survivor.

And I have given this Court everything.

Please do not let administrative silence become constitutional death.

Respectfully,

JANE DOE

Pro Se Petitioner

May 7, 2025

SUPREME COURT OF THE UNITED STATES

EMERGENCY APPLICATION UNDER RULE 22

To the Honorable John G. Roberts, Chief Justice of the United States

and Circuit Justice for the Fourth Circuit

*Public Facing Document*

## CONFIDENTIAL COVER SHEET – IN SUPPORT OF EMERGENCY RULE 22 APPLICATION

Filed Under Pseudonym: Jane Doe

This information is provided to the Clerk of the United States Supreme Court for internal tracking purposes only. Petitioner respectfully requests that all public references to this matter continue under the pseudonym Jane Doe, pursuant to constitutional protections of privacy and safety under the First, Fifth, and Fourteenth Amendments, and applicable disability and civil rights laws.

Legal Name:

Mailing Address:

Phone Number:

Email:

ReFiling Date: May 7, 2025

Submitted By: Jane Doe, Pro Se Petitioner

Matter: Emergency Application Under Rule 22

Related Case: Appeal No. 25-1343, U.S. Court of Appeals for the Fourth Circuit

This is an initial emergency Rule 22 application. Due to urgent medical and family circumstances, additional exhibits and documentation were delivered by hand on May 6, 2025. Please ensure the Court is notified that this is a live, active constitutional emergency. Petitioner can be reached at the contact information enclosed.

This application relates to Appeal No. 25-1343, currently pending before the United States Court of Appeals for the Fourth Circuit. Due to Petitioner's status as a pro se litigant, this submission

may not follow standard formatting or protocol, but Petitioner respectfully requests that the Court review it with consideration of constitutional urgency and access-to-justice protections.

---

**Note Regarding Clerk's May 7, 2025 Rejection:**

Petitioner objects to the Clerk's return of her May 6, 2025 Rule 22 Emergency Application. Supreme Court Rule 22(b) requires that emergency applications be promptly transmitted to the assigned Justice. The Clerk does not have discretionary authority to reject or reinterpret such filings. Petitioner's application clearly sought emergency constitutional protection under Rule 22 and 28 U.S.C. § 1651(a) (All Writs Act), and was not a petition for certiorari under Rule 13. The Clerk's mischaracterization of the application as improperly filed constitutes administrative obstruction, and further endangers Petitioner's access to judicial relief. This objection is included in the record and should be routed to Chief Justice Roberts in accordance with the Constitution and the Court's own procedures.

---

**Clarification of Procedural Authority:**

A Rule 22 Emergency Application is used to request immediate relief from an individual Justice—often to protect life, stop retaliation, or prevent irreparable constitutional harm—before a final judgment. It is governed by Supreme Court Rule 22(b) and supported by the All Writs Act, 28 U.S.C. § 1651(a), which gives the Court authority to issue writs necessary to aid its jurisdiction.

By contrast, a petition for a writ of certiorari, under Supreme Court Rule 13, is used to seek discretionary review after a final judgment has been entered in a lower court. It does not offer emergency protection and cannot substitute for a Rule 22 application when harm is active and ongoing.

Petitioner filed under Rule 22 because this is a live emergency, and the Fourth Circuit has failed to act on the underlying petition since April 3, 2025. The Clerk's rejection mischaracterizes the purpose and structure of the application, and unlawfully diverts it from its required path.

Respectfully submitted,

/s/ Jane Doe

Pro Se Petitioner

**SUPREME COURT OF THE UNITED STATES**

EMERGENCY APPLICATION UNDER RULE 22

To the Honorable John G. Roberts, Chief Justice of the United States

and Circuit Justice for the Fourth Circuit

In re:

JANE DOE, Petitioner

v.

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA, et al.

Related Appellate Docket: Fourth Circuit No. 25-1343

---

**CLARIFICATION OF RECORD AND NOTICE OF INADVERTENT MISSTATEMENTS**

(Filed in Support of Emergency Application Under Rule 22 and All Writs Act Relief)

Submitted by: Jane Doe, Pro Se Petitioner

Date: May 7, 2025

---

Due to the emergency nature of my Rule 22 Application filed on May 6, 2025, and my status as a pro se litigant navigating retaliatory federal and judicial systems, I respectfully submit the following clarification of record. These corrections are submitted in good faith and do not change the substance or urgency of the constitutional harm presented. They are offered to preserve the accuracy and credibility of my pleadings.

---

**1. Sanctions Order – Judge Randolph D. Moss**

Original Statement:

My Rule 22 application stated that Judge Moss "granted a motion to sanction me."

Clarification:

That was an inadvertent misstatement. The correct procedural fact is that Judge Moss issued an order threatening sanctions, which was then filed into a procedurally sealed docket, making it inaccessible via PACER or standard public access. I did not receive a formal, docketed notice, nor was the order visible through standard electronic means. I was forced to retrieve the order manually—after it had been filed outside public view.

Legal Implications:

- Federal Rule of Civil Procedure 5.2(d) – Improper sealing or concealment of orders involving public proceedings violates transparency and due process.

- 28 U.S.C. § 455 – A judge must disqualify themselves where impartiality may reasonably be questioned, especially when sealing impacts one party and forecloses access.

- Fifth Amendment – The right to due process includes notice of judicial action and the opportunity to respond or appeal.

---

## 2. DOJ's March 3 Filing – Reference to Judge Moss

Original Language (Implied):

That the DOJ's March 3 motion "named" Judge Moss as the presiding judge in the related case.

Clarification:

The DOJ's filing did not explicitly name Judge Moss, but I contend—and hereby clarify—that the structure, content, and procedural framing of that March 3 motion functioned as a procedural signal that the case would be routed to Judge Moss. No formal notice of related case, no motion to consolidate, and no public reassignment order appeared on the docket. The effect was that the case was transferred without transparency, public record, or formal opportunity to oppose—raising serious concerns of forum manipulation.

Legal Implications:

- Local Civil Rule 40.5 (D.D.C.) – Governs related case designation and requires certification and transparency. Improper bypass violates assignment protocols.

- Canon 2 of the Code of Conduct for United States Judges – Judges must avoid both impropriety and the appearance of impropriety in all activities.

- 18 U.S.C. § 1505 – Obstruction of proceedings includes acts that improperly influence judicial process or interfere with administrative due process.

---

These clarifications are made solely to preserve the integrity of my filing, and to ensure that technical language errors are not exploited to discredit the constitutional basis of my claims. The underlying facts—procedural retaliation, sealing misuse, judicial inaction, and DOJ coordination—remain unchallenged by these corrections.

This does not void the Rule 22 filing.

It strengthens it.

The All Writs Act (28 U.S.C. § 1651(a)), Supreme Court Rule 22, and the First and Fifth Amendments support my right to seek emergency relief from unlawful court conduct—regardless of how hostile the system becomes.

I reserve the right to supplement this clarification if the Court or Respondents misuse any phrasing to distort my intent or facts further.

Respectfully submitted,

JANE DOE

Pro Se Petitioner

May 7, 2025

**SUPPLEMENTAL STATEMENT**

IN RESPONSE TO CLERK'S RETURN LETTER AND THE MISCHARACTERIZATION OF EMERGENCY RELIEF

Objection to Improper Reframing of Emergency Application as Writ of Certiorari Request

This is submitted in addition to my formal objection already filed and printed.

On May 7, 2025, Robert Meek wrote the following in returning my Rule 22 emergency filing:

> "The papers you submitted are not construed to be a petition for writ of certiorari."

That line is not neutral.

That line is passive-aggressive judicial deflection masquerading as administrative guidance.

And it proves exactly what I alleged in my emergency application: that the system is reframing my survival as a paperwork problem.

Let me be absolutely clear:

I did not file a petition for certiorari. I filed an emergency Rule 22 application.

It was labeled as such. It was addressed to the Chief Justice as Circuit Justice. It was supported by constitutional authority, federal statute, and Supreme Court precedent.

It included over 70 pages of sworn declaration, trauma documentation, and legal grounds for intervention.

> Rule 22 does not require final judgment.
> Rule 22 does not require appellate exhaustion.
> Rule 22 exists for one reason: to give a Justice the power to act when lower courts won't.

So why would Mr. Meek choose to say what the filing wasn't—instead of routing it to the Justice under Rule 22(b) as he was required to?

Because telling me this "is not a cert petition" allows him to act like there was a mistake—when there wasn't.

That is gaslighting by redirection.

That is the institutional version of saying, "This is not the way," when the truth is: you just didn't want to look.

## LET ME NOW EXPLAIN—POINT-BY-POINT—WHAT YOU ACTUALLY DID, MR. MEEK:

You tried to reframe my Rule 22 emergency constitutional application—filed because I am under active retaliation and procedural sealing—as if it were a petition for certiorari, which is used only to request discretionary review after a final judgment.

But that was not what I submitted. And you know that.

Rule 22 exists specifically so a Justice can take action before or independent of a final decision.

It's not a backdoor cert petition. It's a tool for survival when lower courts refuse to act.

By pretending my Rule 22 application was a misplaced cert petition, you created the illusion that I filed the wrong thing—when in fact, you mishandled a legally proper emergency submission.

You did not just confuse procedure—you flipped it upside down to justify returning my filing unread.

That is not harmless mislabeling. That is deliberate deflection, and it has constitutional consequences.

## SUPPLEMENTAL CLARIFICATION FOR THE RECORD: WHAT THIS FILING ACTUALLY IS

To the Chief Justice and Judicial Officers of this Court:

I respectfully submit this supplemental objection to address a specific procedural mischaracterization in the Clerk's May 7, 2025 return letter, signed by Robert Meek.

The letter states:

"The papers you submitted are not construed to be a petition for writ of certiorari."

That line is deeply misleading and legally inapplicable.

I did not file a petition for certiorari.

I did not seek discretionary appellate review of a final judgment.

I filed an Emergency Application under Supreme Court Rule 22—supported by the All Writs Act (28 U.S.C. § 1651(a))—to request:

- Constitutional protection,

- Emergency judicial oversight,

- Structural relief for retaliation and sealed sanctions,

- And review by the Circuit Justice due to ongoing harm and jurisdictional obstruction.

The suggestion that my only remedy is to "file a petition for writ of certiorari" is not only incorrect under Court rules—it is insulting to the purpose of Rule 22, which exists precisely because irreparable harm may occur before final rulings are reached.

> This was not a request for review.
> This was a cry for protection.

Rule 22 exists so that the judiciary can respond when the lower courts have failed to do so. That failure is documented on the record—including judicial silence, sealed sanctions, ADA violations, and the obstruction of my pending Fourth Circuit emergency petition (No. 25-1343).

> "It is emphatically the province and duty of the judicial department to say what the law is."
> — Marbury v. Madison, 5 U.S. 137 (1803)

I ask this Court not to let administrative deflection replace constitutional responsibility.

Please recognize this supplemental statement as part of the official objection to the Clerk's May 7 return, and as a reaffirmation that this is a valid Rule 22 emergency application.

---

This was a Rule 22 filing.

This was a cry for help.

This was not certiorari, and you knew that.

What you sent me was not guidance. It was a warning:

that no matter what I followed, the law would still be misread to exclude me.

I am not confused.

I am endangered.

And now your letter is part of the record that proves it.

JANE DOE

Pro Se Petitioner

May 7, 2025

**STATEMENT OF LEGAL AUTHORITY FOR RULE 22 EMERGENCY APPLICATIONS**

In Support of Petitioner's Right to Emergency Review and In Rebuttal to Clerk's May 7, 2025 Return Letter

Submitted by: Jane Doe, Pro Se Petitioner

Date: May 7, 2025

Related Filing: Emergency Application under Supreme Court Rule 22, filed May 6, 2025

## I. INTRODUCTION

This statement is submitted to formally document the constitutional, statutory, and procedural authority that governs the filing of emergency applications under Supreme Court Rule 22. It is not required—but it is now necessary, because the Clerk's Office, through Mr. Robert Meek, has violated the plain meaning and purpose of Rule 22 and obstructed access to a sitting Justice of the Court.

## II. RULE 22 IS NOT A SUGGESTION—IT IS THE EXPRESSION OF ARTICLE III POWER

> "The Clerk shall promptly transmit [an emergency application] to the Justice concerned."
> — Supreme Court Rule 22(b)

The Clerk's role under Rule 22 is ministerial, not discretionary. Once a Rule 22 application is filed and properly addressed to a Justice, the Clerk must transmit it. No statute, case, or rule permits the Clerk to "construe" the filing into something else to justify non-transmission.

Rule 22 is the procedural expression of Article III judicial power, which vests in the Justices of the Supreme Court—not in its administrative staff.

> U.S. Const. art. III, § 1: "The judicial power of the United States, shall be vested in one Supreme Court…"

Refusing to transmit a Rule 22 application effectively blocks access to that judicial power.

## III. RULE 22 IS SUPPORTED BY THE ALL WRITS ACT

28 U.S.C. § 1651(a) (All Writs Act):

"All courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions…"

A Rule 22 application may seek extraordinary relief under the All Writs Act, including:

- Writs of mandamus,

- Emergency stays,

- Supervisory orders.

This authority does not require a final judgment or even a docketed appeal. It only requires a constitutional or jurisdictional emergency, which was clearly presented in Petitioner's May 6 submission.

## IV. RULE 22 RELIEF IS SUPPORTED BY CONSTITUTIONAL CASE LAW

Ex parte Young, 209 U.S. 123 (1908):
Federal courts may enjoin state or federal officials acting unconstitutionally—even before final resolution in lower courts.
Marbury v. Madison, 5 U.S. 137 (1803):
"It is emphatically the province and duty of the judicial department to say what the law is."
Tennessee v. Lane, 541 U.S. 509 (2004):
Disabled individuals have the right to access the courts under the ADA and the Constitution.
Bounds v. Smith, 430 U.S. 817 (1977):
Access to the courts must be "adequate, effective, and meaningful."

In light of these precedents, any refusal to transmit a Rule 22 application—especially from a disabled litigant alleging constitutional harm and retaliation—is not just administrative error. It is a violation of due process and a denial of access to judicial remedy.

## V. THE CLERK'S ACTIONS VIOLATE CONSTITUTIONAL GUARANTEES

By failing to transmit the application and falsely characterizing it as something it is not, Mr. Meek:

1. Violated Rule 22(b) by refusing to transmit the filing to Chief Justice Roberts,

2. Violated 28 U.S.C. § 1651(a) by obstructing the exercise of the All Writs Act,

3. Violated the Fifth Amendment by depriving Petitioner of procedural due process,

4. Violated ADA Title II by blocking court access to a disabled litigant,

5. Violated established Supreme Court precedent protecting emergency access to judicial relief.

## VII. ADDITIONAL NOTE ON MISDIRECTION AND ADMINISTRATIVE DEFIANCE

The final paragraph of Mr. Meek's return letter reads:

> "For other relief, you may seek review of a decision only by filing a timely petition for writ of certiorari. The papers you submitted are not construed to be a petition for writ of certiorari. Should you choose to file a petition for writ of certiorari, you must submit the petition within the 90-day time limit allowed under Rule 13. A copy of the Rules of this Court and a sample petition… are enclosed."

This paragraph is not harmless. It is a clear act of administrative misdirection designed to redirect and dismiss a Rule 22 emergency filing by pretending it was something else.

By stating, "These papers are not construed to be a petition for writ of certiorari," Mr. Meek:

- Admits he received a filing that was something else,

- Fails to name that filing,

- Refuses to transmit it under Rule 22(b),

- And instead offers instructions for a legal process that does not apply.

This is not clerical confusion.

It is a tactic—to rewrite the nature of a pleading in order to avoid accountability.

The Supreme Court does not authorize its clerks to reroute constitutional emergencies into dead-end processes.

A Rule 22 filing is not a cert petition.

It is a constitutional emergency.

The moment this Court allows a clerk to tell a litigant "you should try something else" while withholding the very mechanism designed for emergency relief, the Court itself becomes complicit in what follows.

Let the record now reflect:

This was a Rule 22 emergency application.

You were obligated to transmit it.

You refused.

And now the Constitution stands as witness.

---

## VI. CONCLUSION

Petitioner's filing was lawful, urgent, and jurisdictionally sound.

The Clerk's Office does not have the authority to erase or reinterpret the nature of a Rule 22 filing.

To do so is not only improper—it is a violation of federal law and the Constitution.

This statement is now submitted into the record, not because Petitioner must justify her access to the Court—but because the Court must now answer for its gatekeeping.

Respectfully submitted,

JANE DOE

Pro Se Petitioner

May 7, 2025

TO: THE HONORABLE JOHN G. ROBERTS, JR.

CHIEF JUSTICE OF THE UNITED STATES

RE: EMERGENCY APPLICATION UNDER RULE 22 (JANE DOE V. EDVA – FOURTH
CIRCUIT CASE NO. 25-1343) (Clerk Meek Denied Review on 6May2025)

IN-CHAMBERS REQUEST FOR SUPERVISORY CONSTITUTIONAL RELIEF

FORMAL NOTICE OF CLERICAL OBSTRUCTION AND CONSTITUTIONAL VIOLATION

Emergency Application under Rule 22 is properly before you as Circuit Justice for the
Fourth Circuit. It was unlawfully rejected by a Clerk of this Court who exceeded his
ministerial authority and obstructed judicial access during a live constitutional crisis.
This note serves as formal objection and evidentiary record.

The Clerk obstructed a Rule 22 filing and acted outside his legal role. Rule 22
applications are addressed to a Justice, not adjudicated by court staff. Robert Meek,
Deputy Clerk, had no authority to reject my constitutional emergency application. Doing
so was a violation of Article III separation of powers and a denial of First Amendment
petition rights. Rule 22 exists specifically to prevent what has now occurred: the
suppression of emergency constitutional relief due to gatekeeping by administrative
staff. In re McKenzie, 180 U.S. 536 (1901), makes this clear: only a Justice may review or
act upon an emergency writ. A clerk cannot screen, deny, or delay on their own authority.

The Clerk cited the wrong law. The rejection letter invoked 28 U.S.C. § 2101(f) and
Supreme Court Rule 13—both of which govern petitions for writ of certiorari after final
appellate rulings. My filing was a Rule 22 emergency application, not a cert petition.
There was no final judgment, and thus no jurisdictional basis for certiorari. The
controlling authority here is the All Writs Act, 28 U.S.C. § 1651(a), not § 2101(f). The
Clerk's reasoning was legally false.

The Clerk referred me to the wrong circuit. The Clerk's letter instructed me to seek relief
from the Ninth Circuit, despite my case being docketed in the Fourth Circuit (USCA4 No.
25-1343). This is not a clerical oversight—it is a factual misstatement with life-altering
consequence.

This was not mere error—this was constitutional obstruction. I am a combat veteran,
military rape survivor, disabled mother, and pro se litigant who filed under the
pseudonym Jane Doe to protect my family. My application documented retaliation by
federal courts, misuse of sealed psychiatric records, and injury caused by
government-funded entities. The Clerk's unilateral rejection, without any review by a
Justice, constitutes: a violation of the First Amendment (right to petition the government
for redress of grievances); a violation of the Fifth Amendment (denial of due process and
equal protection by procedural suppression); a violation of the Eighth Amendment

(exposure to retaliatory trauma and state-enabled suffering without remedy); a violation of the Tenth Amendment (circumventing the reserved right of emergency legal access in structural crisis); and a violation of the Fourteenth Amendment (denial of equal protection and liberty interest as a disabled veteran seeking redress).

This Court is now on notice. What the Clerk did was not neutral. It was substantive interference in a judicial emergency. This Court must not permit its administrative arm to suppress constitutionally urgent filings—especially from those who are vulnerable, disabled, and unrepresented. If what happened to me is allowed, it becomes precedent: a precedent where sealed trauma is turned into silence, and pro se litigants are denied access to the very Justice assigned to hear their case.

I mean no disrespect, but I am fighting to survive. The record I submitted made clear that I am in danger. Judicial silence is being weaponized against me. If this Court will not hear me, then I ask it to tell the nation plainly: who will protect a veteran raped in service, denied care, punished for surviving, and sealed out of her own constitutional rights?

A petition for certiorari is optional. Rule 22 is urgent. Legally, a petition for writ of certiorari is optional—it is a discretionary request, filed in the hope that the Court may someday review an injustice after the damage is done. It is not a guaranteed remedy, nor a prerequisite for emergency action. Rule 22, by contrast, exists to stop constitutional harm in real time. It is not about review—it is about rescue. It is the legal mechanism that exists to prevent the bleeding, prevent the civil death, prevent the irreparable harm that occurs when the courts refuse to act. The Clerk's conflation of these two paths—one optional, one urgent—was not just incorrect. It was dangerous. I didn't file for hope. I filed to survive. Rule 22 was created for exactly this purpose: to stop. To intervene. To prevent a catastrophe before it becomes irreversible.

Authority that commands Supreme Court action under Rule 22. The Supreme Court and individual Justices have the authority—and the duty—to act on emergency applications under Rule 22 where there is (1) a showing of irreparable harm, (2) a likelihood of constitutional violation, and (3) no adequate remedy available in the lower courts. As the Court held in Williams v. Zbaraz, 442 U.S. 1309, 1311 (1979) (Stevens, J., in chambers): "When the normal appellate process offers no timely remedy… this Court has the power and, in some cases, the obligation to act." The Court further recognized in Ohio Citizens for Responsible Energy v. NRC, 479 U.S. 1312, 1313 (1986) (Scalia, J., in chambers): "Rule 22 empowers the Circuit Justice to provide temporary relief when there is a showing of grave constitutional injury and no procedural path exists to prevent it." This is one of those cases. The Clerk's obstruction cut off access to that path, and now the obligation to act rests solely with the Chief Justice under Rule 22, Article III, and 28 U.S.C. § 1651(a). The Constitution does not wait for paperwork. It protects people. I am a person.

Respectfully submitted,

Filed May 7, 2025 – By Jane Doe

I served in Iraq from 2007-2008 during the deadliest year of the war. I patrolled the Triangle of Death: Iskandariyah, Latifiyah, Mahmoudiyah, Yusufiyah, Jurf Al-Sakhar, Zubaida, Zukaytun. IEDs. Snipers. Mortars. Ambushes. Every single day. I turned 23 the day before I deployed. While others lit candles, I carried a rifle into war. I was raped while serving my country. I came home from one battlefield only to step into another—a war inside the courts, where sealed trauma is used against me, where judicial silence is treated as justice, and where asserting my rights has become the basis for retaliation.

I am now being raped by procedure—by sealed sanctions, dismissed emergencies, and sealed trauma weaponized by the judiciary. This is not litigation. This is constitutional violence. My children are watching this country brutalize their mother for trying to survive. I do not bring this to you for recognition. I bring this to you because I am trying to live. And because what is happening to me—if allowed—will become precedent. I am asking this Court to stop a war before it kills me.

———

SUPREME COURT OF THE UNITED STATES
EMERGENCY APPLICATION UNDER RULE 22 FOR EXTRAORDINARY RELIEF
TO THE HONORABLE JOHN G. ROBERTS, JR.
CHIEF JUSTICE OF THE UNITED STATES
AND CIRCUIT JUSTICE FOR THE FOURTH CIRCUIT

———

IN RE:
JANE DOE,
Petitioner

v.

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA,
DEPARTMENT OF VETERANS AFFAIRS,
FRIENDSHIP PLACE,
BOZZUTO MANAGEMENT COMPANY,
AND RELATED FEDERAL AND PRIVATE ACTORS,
Respondents

———

EMERGENCY APPLICATION FOR CONSTITUTIONAL INTERVENTION, PROTECTIVE
RELIEF, AND SUPERVISORY REVIEW UNDER RULE 22, 28 U.S.C. §§ 1651(a) AND 2106,
AND THE FIRST, FIFTH, AND FOURTEENTH AMENDMENTS

——

Respectfully submitted,

Jane Doe
Pro Se Petitioner
Pseudonym asserted under constitutional privacy and safety protections
May 5, 2025

May 7th 2025

TO:
The Honorable John G. Roberts, Jr.
Chief Justice of the United States
(As Circuit Justice for the Fourth Circuit)
Supreme Court of the United States
1 First Street, NE
Washington, DC 20543

RE: Emergency Application Under Rule 22
Jane Doe v. EDVA – Fourth Circuit Case No. 25-1343
Includes Formal Objection to Clerk Interference and Constitutional Request for Supervisory Relief

**IN THE SUPREME COURT OF THE UNITED STATES**

EMERGENCY APPLICATION UNDER RULE 22

To the Honorable John G. Roberts, Chief Justice of the United States

and Circuit Justice for the Fourth Circuit

In re:

JANE DOE, Petitioner,

v.

TOWN SQUARE AT MARK CENTER; BOZZUTO MANAGEMENT COMPANY; EQUITY
RESIDENTIAL; READING AVE OWNER LLC; FRIENDSHIP PLACE; THE HONORABLE
PATRICIA TOLLIVER GILES; THE HONORABLE IVAN D. DAVIS,

Respondents.

---

**EMERGENCY APPLICATION FOR CONSTITUTIONAL RELIEF, INJUNCTIVE
PROTECTION, AND SUPERVISORY REVIEW**

Pursuant to Supreme Court Rule 22, 28 U.S.C. § 1651(a), and the Fifth and Fourteenth
Amendments

---

## 1. THIS IS NOT JUST A LAWSUIT — THIS IS MY LIFE ON THE LINE

I am a disabled veteran, a rape survivor, a caregiver, and a mother of five. This declaration is not
a formality—it is a lifeline. I am writing because what is happening to me and my family is not a
misunderstanding. It is a constitutional failure. And I need the courts to stop pretending it is
anything less.

## 2. A SYSTEMIC PATTERN OF CONSTITUTIONAL NEGLECT

I have appeared before multiple federal judges—Judge Katherine Ellsworth Oler, Judge Patricia
Tolliver Giles, Judge Sparkle L. Sooknanan, and Magistrate Judge Ivan D. Davis. Each has had
access to filings citing my medical history, my suicidal ideation, my husband's advanced

disability, our children's unmet medical needs, and the VA's violation of multiple federal protections.

Not one judge has meaningfully intervened. Instead, they've ruled around me, over me, and through me—but never for me.

When I sued the judges who perpetuated this harm, Judge Sooknanan dismissed my filing by calling me a "rambler."

But I am not rambling. I am documenting survival under institutional pressure.

See Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("When government conduct implicates constitutional guarantees, courts must intervene, even in complex or novel cases.")

### 3. THE INEXCUSABLE CONDUCT OF JUDGE KATHERINE E. OLER

In February 2025, I filed for an emergency injunction in D.C. Superior Court to protect my family from active retaliation by federally funded agencies. I cited:

- Retaliatory denial of housing aid under 38 C.F.R. § 62.80;

- Denial of accommodations under the ADA and Section 504 of the Rehabilitation Act;

- Ongoing harm to my husband's health and my own mental stability, both documented by licensed medical professionals.

Judge Katherine Ellsworth Oler denied the injunction.

She did not reference my medical records.

She did not acknowledge my suicide risk.

She did not address my ADA or Section 504 claims.

She did not apply the governing standard.

Under Winter v. Natural Resources Defense Council, 555 U.S. 7 (2008), a preliminary injunction is warranted when the movant shows:

1  A likelihood of success on the merits;

2  A likelihood of irreparable harm without relief;

3  That the balance of equities tips in their favor;

4   That an injunction is in the public interest.

I met all four prongs. Judge Oler's failure to apply them was not a legal oversight—it was a constitutional betrayal. In denying my injunction without analysis, without reasoning, and without respect for the law I cited, she violated my Fifth and Fourteenth Amendment rights to due process.

Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009) — Due process is violated where judicial neutrality is structurally compromised.

Judge Oler's ruling did not simply omit facts—it elevated institutional preference over federal disability law, substituting her court's internal practices for binding statutory protections. That is unconstitutional. Courts cannot override the Americans with Disabilities Act, the Rehabilitation Act, or VA regulations simply by failing to apply them. This denial of federally codified protections violates not only due process, but the Supremacy Clause of the Constitution.

Even more egregiously, Judge Oler stated in open court that if Friendship Place—a Supportive Services for Veteran Families (SSVF) grantee operating under federal contract with the U.S. Department of Veterans Affairs—were to provide continued assistance to me, a service-connected disabled veteran experiencing suicidal ideation, with five minor children, a disabled husband, and documented urgent medical needs, they could lose their federal grant. That statement was not only chilling, it was legally false.

Federal grantees must provide reasonable accommodations under the ADA, Section 504, and VA regulation 38 C.F.R. § 62.33. These laws do not permit retaliation, nor do they condition funding on the grantee's willingness to ignore medical documentation or judicial filings. If anything, federal law requires continued housing support where harm is likely and documentation is clear.

Judge Oler's statement amounted to a judicial endorsement of noncompliance with federal civil rights law as a condition of program survival. That violates the Supremacy Clause, the ADA's Title II enforcement provisions (42 U.S.C. § 12132), the Rehabilitation Act (29 U.S.C. § 794(a)), and the First and Fifth Amendments, which prohibit retaliation against petitioners seeking relief in court.

See Tennessee v. Lane, 541 U.S. 509 (2004);

Alexander v. Choate, 469 U.S. 287 (1985);

Castle Rock v. Gonzales, 545 U.S. 748 (2005) (government discretion does not override procedural due process);

Board of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356 (2001) (ADA Title I and II subject states and public entities to suit for constitutional violations).

This is not a dispute over technical compliance—it is a live violation of the Constitution, in which a federal judge used her authority to endorse noncompliance with federal disability law as a condition of funding, thereby placing Petitioner's life in danger. Such conduct shocks the conscience and warrants immediate intervention.

Rochin v. California, 342 U.S. 165 (1952) – "[C]onduct that shocks the conscience is incompatible with the due process of law."

Monell v. Dept. of Social Services, 436 U.S. 658 (1978) – Local or institutional actors are liable under 42 U.S.C. § 1983 when policy or practice causes constitutional injury.

**4. THE COURTS HAVE SAID: "GO DIE."**

I do not say this lightly.

When a disabled mother discloses suicidal ideation in multiple sworn declarations, and the court responds with silence, delay, or dismissal, it is not neutrality—

it is institutional homicide by omission.

What else do you call it when I say, "I do not want to die," and the court says, "You are a rambler"?

What else do you call it when my housing is endangered, my psychiatric care is stripped, and the only system left to me—the courts—watches silently?

This is state-embedded cruelty, and it violates the Eighth Amendment, the Rehabilitation Act, and basic human dignity.

The Constitution prohibits deliberate indifference to medical and mental health needs.

Estelle v. Gamble, 429 U.S. 97, 104 (1976)

("Deliberate indifference to serious medical needs... constitutes unnecessary and wanton infliction of pain.")

Government inaction in the face of systemic deprivation, where the state has created dependence, violates the Due Process Clause.

Youngberg v. Romeo, 457 U.S. 307, 314 (1982) (Recognizing substantive due process rights for individuals with disabilities in state custody).

The government may not retaliate against individuals seeking access to the courts.

Bounds v. Smith, 430 U.S. 817, 828 (1977)

("The fundamental constitutional right of access to the courts requires prison authorities to assist inmates....")

Petitioner is not incarcerated, but she is trapped within an equally coercive system: housing funded by VA grants, mental health eligibility tied to paperwork, and judicial outcomes decided without ADA compliance.

In this context, judicial silence in the face of suicide disclosures is not passive—it is unconstitutional.

Farmer v. Brennan, 511 U.S. 825 (1994) (Liability exists where an official "knows of and disregards an excessive risk to inmate health or safety.")

When courts are presented with clear psychiatric harm and imminent risk—and take no action—they become participants in constructive state violence.

And when that pattern occurs across multiple jurisdictions, Rule 22 emergency relief is not just warranted—it is necessary to preserve the Constitution itself.

## 5. I AM FIGHTING SYSTEMIC ABUSE WHILE DISSOCIATING

The Department of Veterans Affairs removed me from suicide stabilization in April 2024, after I made protected complaints. It destroyed my life.

My husband has no medically appropriate home.

My children are missing appointments.

And I am dissociating from trauma just to write this declaration.

This is not performative suffering.

This is managed survival in a collapsing system.

And I am forced to carry this entire litigation—pro se—while:

- Drafting my own motions,

- Analyzing judicial corruption,

- And raising five children, including one under the age of two.

This is not just negligence by the government.

This is abandonment by design.

On April 3, 2025, I filed an emergency petition for a writ of injunction and mandamus in the U.S. Court of Appeals for the Fourth Circuit, citing clear and documented danger to my family's safety and constitutional rights. That petition remains pending. I understand that every circuit is burdened and every clerk is overworked—but what happens when the system fails everyone at once?

Who stops the harm when no one intervenes?

Patsy v. Board of Regents of State of Fla., 457 U.S. 496 (1982)

("Exhaustion of administrative remedies is not required where constitutional rights are at stake and no adequate relief exists.")

Marbury v. Madison, 5 U.S. 137 (1803)

("It is a settled and invariable principle… that every right, when withheld, must have a remedy, and every injury its proper redress.")

I disclosed suicidal ideation.

I filed psychiatric evaluations.

I filed sworn declarations.

I cited sealed trauma records.

I named public officials and private contractors.

And still the courts did not act.

This is not a procedural delay. It is a constitutional failure with life-and-death consequences.

Under Rule 5.2(d) of the Federal Rules of Civil Procedure, courts are obligated to safeguard sealed mental health filings—not expose, ignore, or weaponize them.

Under the ADA and Section 504, judicial systems are public entities bound to provide meaningful access, not procedural abandonment.

Tennessee v. Lane, 541 U.S. 509 (2004):

"Title II of the ADA seeks to ensure that every individual—regardless of disability—has access to the courts."

Youngberg v. Romeo, 457 U.S. 307 (1982):

The Constitution imposes "a duty to protect" where the state has created conditions of dependence and vulnerability.

Estelle v. Gamble, 429 U.S. 97 (1976):

Courts may not stand by when deliberate indifference to medical needs results in unnecessary suffering.

In this case, I did everything required by law.

I followed procedure.

I filed under seal.

I documented suicidal risk.

I cited doctors and diagnoses.

I named names.

And still—no one intervened.

This Court now stands alone as the final safeguard.

Marbury v. Madison, 5 U.S. 137 (1803):

"It is emphatically the province and duty of the judicial department to say what the law is."

Judge Patricia Tolliver Giles and Judge Ivan Davis have been repeatedly named in filings documenting this crisis, and yet they have refused to rule on multiple injunctions—leaving sealed records of trauma to expire on the docket while harm escalated.

I did not submit these declarations into abstract court records.

I went to their own courtroom.

I filed these declarations on their own dockets.

I asked them personally, formally, and procedurally to intervene.

They had actual notice—and they chose silence.

This was not judicial discretion. This was judicial abandonment of duty.

Under 28 U.S.C. § 455(a), a judge must disqualify themselves "in any proceeding in which [their] impartiality might reasonably be questioned." Repeated failure to respond to sealed declarations of medical crisis, in their own courtrooms, after being placed on formal notice, violates not only this statute but the Constitution itself.

Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009):

"Judicial bias, or even the appearance thereof, can violate due process where it creates a constitutionally intolerable risk of unfairness."

Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980):

"[A] fair trial in a fair tribunal is a basic requirement of due process."

Dennis v. Sparks, 449 U.S. 24 (1980):

"Judicial immunity does not shield judges who conspire with private actors to deprive constitutional rights under color of law."

To ignore psychiatric declarations—on your own docket—while claimants cite suicidal risk, child endangerment, and ADA violations, is not neutral.

It is unlawful.

It is retaliatory.

And it is constitutionally fatal.

The courts cannot simultaneously demand orderly litigation and ignore live constitutional injury.

That is not judicial restraint.

That is judicial erasure.

Wilkinson v. Dotson, 544 U.S. 74 (2005):

"The law remains that individuals must have a meaningful opportunity to be heard."

What is happening is not disorganization.

It is institutional abandonment.

And it is unfolding in real time.

## 6. I ESCALATED — AND THE SYSTEM RETALIATED

Between April 1 and April 18, 2025, I formally escalated my complaint against multiple Department of Veterans Affairs officials.

I submitted names. I submitted emails. I cited federal law. I connected legal violations to lived trauma.

At the same time, I filed in the EDVA cases which were assigned to Judge Patricia Tolliver Giles and Judge Ivan D. Davis, respectfully requesting that they both recuse themselves. I provided detailed documentation of their failure to rule on emergency injunctions, their refusal to cite federal disability law, and their role in worsening my harm.

This was not a single filing. It was part of a pattern of lawful whistleblowing.

And it triggered a wave of constitutional retaliation.

- On April 3, I filed a petition for emergency injunctive relief with the Fourth Circuit.

- On or around April 16, Judge Sparkle L. Sooknanan labeled my complaint "frivolous" after inheriting the Giles/Davis matter.

- On April 18, Judge Randolph D. Moss administratively closed both of my active federal cases—seven days before a required filing was due.

Then, instead of issuing rulings or letting me appeal, Judge Moss blamed me for the closures.

He opened a new case under a different number and claimed it was my fault for filing under Jane Doe.

I did not request a new case.

I requested protection.

He gave me a procedural trap, then claimed there was no appealable item, because he destroyed the docket structure that would have allowed review.

When I filed a motion for sanctions against the DOJ—after they sent me a retaliatory filing they later admitted was a "mistake"—Judge Moss delayed for 50 days, then warned he would sanction me instead.

He is now withholding that motion from the docket.

It is being used to threaten me, not resolve the issue.

This is not oversight.

This is coordinated judicial suppression.

Christopher v. Harbury, 536 U.S. 403 (2002):

"The right of access to courts is violated when official acts render a remedy unobtainable."

Bounds v. Smith, 430 U.S. 817 (1977):

"Access to the courts must be adequate, effective, and meaningful."

Garcetti v. Ceballos, 547 U.S. 410 (2006):

Government actors may not retaliate against individuals who expose misconduct through legal filings.

18 U.S.C. § 1505 – Obstruction of proceedings includes any act that corruptly interferes with the proper administration of law.

This is ongoing retaliation, unfolding in real time.

I am a combat rape survivor.

I have repeatedly disclosed suicidal ideation, trauma-related dissociation, and emergency medical needs.

I have asked for help—through proper legal filings, through judicial notice, through every lawful channel.

And I have been met not with protection—but with accelerated retaliation.

Judge Moss's procedural maneuvers are not just inconvenient.

They are being used to erase the record, block my appellate rights, and punish me for whistleblowing.

This is constitutional retaliation.

This is abuse of discretion under color of law.

And this is why the Supreme Court must act now.

## 7. JUDICIAL CONFLICTS AND FEDERAL COLLUSION

Both Judge Sparkle L. Sooknanan and Judge Randolph D. Moss are former Department of Justice attorneys.

At the exact time I was challenging DOJ retaliation and the Department of Veterans Affairs, they were allowed to:

- Preside over my cases,

- Control the record,

- Rule against me, and

- Conceal their own conflicts of interest—while federal retaliation escalated.

They did not recuse.

They did not disclose.

They ruled.

They retaliated.

This violates 28 U.S.C. § 455(b)(1), which mandates disqualification when a judge "served as a lawyer in the matter in controversy," and § 455(a), which requires disqualification even when there is only an appearance of impropriety or bias.

Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009):

"The Constitution requires recusal when the probability of actual bias on the part of the judge is too high to be constitutionally tolerable."

Williams v. Pennsylvania, 579 U.S. 1 (2016):

"A judge may not sit on a case in which they had prior significant involvement as a government actor."

In my case, the retaliation is not historical.

It is active and ongoing—as of this filing.

After I named Judge Patricia Tolliver Giles and Judge Ivan D. Davis, Judge Sparkle L. Sooknanan called my case "frivolous."

After I challenged DOJ misconduct in a separate federal action, Judge Randolph Moss administratively closed both of my active cases on April 18, 2025, and blamed the closure on my filing under Jane Doe.

But then he did something more serious.

After the administrative closures, he granted a motion to sanction me—and filed that order inside the closed docket, where it cannot be seen by the public or accessed through normal search tools.

I cannot view the order online.

I cannot see it in PACER.

I cannot retrieve it through standard channels.

I had to screenshot the ruling just to carry it to this Court.

I am now forced to print and present a concealed sanctions order—because it was buried in a procedurally sealed record.

There is no legal mechanism by which a litigant should have to request access to their own sanctions order from the judge who imposed it—especially when that same judge has retaliated against them and holds exclusive gatekeeping power.

This is not miscommunication.

This is judicial weaponization.

This case is not small.

It involves VA medical retaliation, the stripping of my suicide prevention care, and the violation of federally protected disability accommodations.

And yet the federal judge assigned to hear it sealed my punishment where no one can find it—and then acted as if it never occurred.

In re Murchison, 349 U.S. 133 (1955):

"Secret justice is not justice at all."

Ex parte Young, 209 U.S. 123 (1908):

"The courts have both the authority and the duty to intervene when officials use legal process to violate constitutional rights."

Every time I escalate, the system retaliates.

Every time I fight, they punish me.

And now, I am standing before this Court with sealed sanctions in my hands, imposed on me by a judge I cannot appeal—because he sealed the path to appeal, too.

This is not a mistake.

This is coordinated federal retaliation under color of judicial authority.

And the Supreme Court is the only remaining institution that can stop it.

As of May 2, 2025, the retaliation continues in real time.

Today, Judge Randolph D. Moss issued two new minute orders in the reopened case.

First, he denied my Motion to Stay, claiming my appeal was "patently improper."

Then, he denied my Motion for Leave to Appeal in Forma Pauperis, stating I had not filed the correct form and that no appealable order exists—even though he himself sealed the ruling that would have created one.

These rulings are not neutral—they are acts of active judicial suppression, issued with full knowledge that I am in crisis, pro se, and litigating under sealed psychiatric disclosures.

Rochin v. California, 342 U.S. 165 (1952):

"Due process is violated where state conduct shocks the conscience."

## 8. A "MISTAKEN" FILING THAT REVEALED EVERYTHING

In March 2025, I received a motion filed by the Department of Justice, dated March 3, 2025, signed by Assistant U.S. Attorney Fithawi Berhane, in S. v. United States, Case No. 25-550 (TNM).

The motion accused me of writing a complaint that was:

- "Unreadable,"

- "Far-fetched," and

- "Deficient."

It mocked my references to suicidal ideation.

It mischaracterized my trauma as incoherent rage.

It erased my disability, my facts, and my law.

But it also did something procedurally alarming.

Inside that motion to dismiss, the DOJ referenced Judge Randolph D. Moss as the presiding judge in a "related case"—despite the fact that the motion was filed in a case not before Judge Moss, and no formal notice of related case was filed on the docket.

Under standard federal procedure, any related-case designation must be made through:

- A formal notice of related case under the Local Rules,

- A docket entry,

- And often with a certification of relatedness or consolidation request that the judge or clerk must evaluate.

That never happened.

Instead, the DOJ embedded a judicial routing decision inside a dispositive motion—effectively hand-delivering my second case to a judge who was:

1   A former DOJ attorney,

2   Already presiding over my broader VA retaliation case, and

3   Named as "related" without any process or public record.

Shortly thereafter, S. v. United States was reassigned to Judge Moss without a motion, hearing, or court order.

This is not a procedural footnote.

It is a jurisdictional red flag.

United States v. Murchison, 349 U.S. 133 (1955):

"A fair trial in a fair tribunal is a basic requirement of due process."

Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009):

"When a judge's impartiality is in serious doubt, even the appearance of bias is enough to violate the Constitution."

To this day, there is no formal record showing how or why the case moved to Judge Moss.

But now he controls both.

And now he is blocking my appellate access, denying in forma pauperis, threatening sanctions, and refusing to release jurisdiction.

The March 3 filing did not just mock my trauma.

It set the stage for judicial retaliation cloaked in administrative procedure.

DOJ later claimed I was never meant to see that filing.

But I did. And it revealed everything.

This was never about law.

It was about power, and about controlling my survival through docket manipulation.

Rochin v. California, 342 U.S. 165 (1952):

"Conduct that shocks the conscience" is incompatible with due process.

Tumey v. Ohio, 273 U.S. 510 (1927):

A judge may not act when they have "a direct, personal, substantial pecuniary interest in reaching a conclusion."

I am in a state of ongoing harm—today, now—because no judge has stepped in to stop this.

The courts below have not missed what's happening.

They are enabling it.

This Court is my last protection from murder by process.

In the days surrounding that filing, I questioned the consolidation. I raised concern about what was happening. But DOJ counsel repeatedly told me "there's nothing to oppose," and Judge Moss issued a minute order calling for a Joint Status Report—without any motion on the docket and without any input from me that had not been manipulated or rushed.

One would believe, reading that record, that I consented.

But I did not consent freely. I consented in confusion, under pressure, and in trauma.

Schneckloth v. Bustamonte, 412 U.S. 218 (1973):

Consent must be freely and voluntarily given—not the product of coercion or misunderstanding.

I was forced to believe that this consolidation was both inevitable and harmless.

Now I see it for what it was: a procedural trap that delivered both of my cases into the hands of a former DOJ official referenced in the DOJ's own retaliation filing.

I tried to resist.

I asked questions.

I begged for time.

But they consolidated anyway.

That moment—the pressure, the deception, the filing—is not just part of the record.

It is evidence of systemic manipulation, and it is why I am here today.

## 9. JUDGE SPARKLE L. SOOKNANAN SHIELDED POWER, NOT THE CONSTITUTION

On or around April 16, 2025—three days before Judge Randolph D. Moss administratively closed both of my federal dockets—Judge Sparkle L. Sooknanan dismissed my constitutional complaint.

I filed that complaint in good faith, naming Judge Patricia Tolliver Giles and Magistrate Judge Ivan D. Davis as defendants based on their failure to rule on emergency motions, refusal to acknowledge federal disability rights, and procedural silencing during active retaliation.

These failures constitute violations of:

- 42 U.S.C. § 12132 – ADA Title II (exclusion from court access based on disability);

- 29 U.S.C. § 794(a) – Section 504 of the Rehabilitation Act (discrimination by federal grantees and courts);

- 42 U.S.C. § 1983 – Deprivation of rights under color of law;

- 28 U.S.C. § 455(a) – Mandatory judicial disqualification;

- U.S. Const. amend. V and XIV – Procedural due process and equal protection.

Tennessee v. Lane, 541 U.S. 509 (2004):

"The unequal treatment of disabled persons in the administration of judicial services has serious constitutional implications."

Daniels v. Williams, 474 U.S. 327 (1986):

"The Due Process Clause is simply not satisfied by a process that is a sham... affording no actual relief."

I provided law.

I provided facts.

I submitted evidence showing irreparable harm, due process violations, and silencing at the height of medical and psychological crisis.

When the complaint reached Judge Sparkle L. Sooknanan, I expected analysis. I expected legal engagement.

Instead, she responded by refusing to examine the substance of my filing, invoking judicial immunity, and labeling my action "frivolous."

Judicial immunity does not shield judges from accountability when they preside over matters in which they are personally named, or when they enable violations of rights under color of law.

In re Nettles, 394 F.3d 1001 (7th Cir. 2005)

Russell v. Lane, 890 F.2d 947 (7th Cir. 1989)

Forrester v. White, 484 U.S. 219 (1988)

Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009)

I did not sue judges lightly.

I did so because I was actively being injured by their inaction.

Judge Sooknanan had the opportunity to restore constitutional oversight. She chose instead to protect her colleagues—not the Constitution.

Her refusal to act caused the collapse of my legal options.

Had she ruled on my claims, I would not be at the Fourth Circuit.

Had she acknowledged jurisdictional obstruction, I would not need to beg for intervention from this Court.

Her silence became a procedural death sentence.

Their refusal to engage with my filings has not only delayed justice—it has prevented it entirely.

The result is not theoretical. It is lived:

- The collapse of my housing

- The denial of my accommodations

- The disintegration of constitutional access to safety

And now: the expansion of retaliation, the sealing of trauma, the erosion of ADA protections, and judicial indifference toward my life and family.

Marbury v. Madison, 5 U.S. 137 (1803):

"It is emphatically the province and duty of the judicial department to say what the law is."

Monroe v. Pape, 365 U.S. 167 (1961):

"[Section 1983] should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions."

This is no longer about error.

It is about constitutional collapse.

And under Rule 22 and 28 U.S.C. § 1651(a), the Supreme Court must now say: enough.

## 10. THE PATTERN IS NOW UNMISTAKABLE

I challenged the Department of Veterans Affairs.

The DOJ responded with a filing that mocked my trauma, labeled me incoherent, and named a judge they knew would protect them.

I escalated.

I filed against Judge Patricia Tolliver Giles and Judge Ivan D. Davis.

I requested recusal.

I submitted sworn testimony, sealed trauma disclosures, and binding federal law.

And I was punished.

- Judge Sparkle L. Sooknanan called my claims "frivolous."

- Judge Randolph D. Moss closed my cases, sealed the record, reassigned the docket, and later sanctioned me in secret.

- On May 2, 2025, he issued two new orders denying my right to appeal—while insisting no appealable order existed.

And yet, despite all this, I still tried to follow the law.

I filed an emergency injunction and petition for writ of mandamus in the Fourth Circuit on April 2, 2025.

To this day, the Fourth Circuit has not ruled on the substance of that emergency filing.

Instead, on May 1, 2025, I went in person to the Fourth Circuit Clerk's Office to file updated materials and request assistance.

I had called ahead.

I brought money for copies.

I explained I was in psychiatric distress and needed help.

Instead of providing copies or ADA accommodations, the clerk refused to assist me.

I became overwhelmed—not aggressive, just visibly distressed.

I left and tried again.

When I returned, the clerk called the U.S. Marshals on me.

I was not violent.

I was not disruptive.

I was trying to survive a legal process that had already tried to erase me.

This is not clerical error.

This is institutional violence in procedural form.

Tennessee v. Lane, 541 U.S. 509 (2004):

"The ADA's Title II protections apply to courts—and prohibit exclusion on the basis of disability."

Bounds v. Smith, 430 U.S. 817 (1977):

The Constitution guarantees meaningful, functional access to judicial process.

I am still waiting for the Fourth Circuit to rule on a filing that could have protected me—before retaliation escalated.

Every day they delay, another judge punishes me, or another agency strips my rights:

- The VA removed me from medical care.

- Friendship Place evicted me from services.

- Bozzuto ignores fair housing law.

- And federal judges silence my filings with sealed rulings and administrative closures.

This is not just trauma—it is retaliation under color of law.

It is deliberate, coordinated denial of judicial protection.

And if this Court does not intervene now, it will be permitting a system to retaliate a disabled, suicidal veteran into silence and disappearance.

This Court does not need to wait for another docket closure, another sealed order, or another obituary to act.

It has the authority—under Supreme Court Rule 22, under 28 U.S.C. § 1651(a), and under its role as the final protector of constitutional order—to intervene now.

Marbury v. Madison, 5 U.S. 137 (1803):

"It is emphatically the province and duty of the judicial department to say what the law is."

Ex parte Young, 209 U.S. 123 (1908):

Federal courts may issue emergency relief when state or federal officers are using their authority to violate constitutional rights.

I am not here because I failed the system.

I am here because the system has targeted me.

And if this Court does not act, it will not be reviewing a record—it will be overseeing a constitutional death sentence executed by sealed docket and procedural omission.

**11. I AM NOT HERE TO MAKE HISTORY. I AM HERE TO STAY ALIVE.**

I have tried every avenue.

I have begged every agency.

I have followed every rule I knew to follow.

What I have been met with is a legal culture that prefers the appearance of order over the pursuit of justice.

But under the Due Process Clauses of the Fifth and Fourteenth Amendments, the government may not erect procedural or institutional barriers that silently dismiss fundamental rights. I am not demanding special treatment—I am invoking the constitutional protection that is owed to all persons under law.

U.S. Const. amend. V & XIV:

"No person shall… be deprived of life, liberty, or property, without due process of law."

Goldberg v. Kelly, 397 U.S. 254, 264 (1970):

"The fundamental requisite of due process of law is the opportunity to be heard… at a meaningful time and in a meaningful manner."

I am not litigious.

I believe in law.

But I also know what it looks like when law becomes a mask for indifference.

Bounds v. Smith, 430 U.S. 817, 828 (1977):

"Meaningful access to the courts is a fundamental constitutional right."

Christopher v. Harbury, 536 U.S. 403, 413 (2002):

"The right of access to courts… rests on the recognition that the right is ancillary to the underlying claim."

Let the record reflect:

- I do not want to die.

- I do not want to be erased.

- I do not want my children to grow up thinking this is what America does to its veterans.

This Court has the power—under Rule 22 and the All Writs Act, 28 U.S.C. § 1651(a)—to act when the lower courts will not.

Ex parte Young, 209 U.S. 123 (1908):

Federal courts may intervene "to stop ongoing constitutional violations," even when committed by government officers, judges, or agencies.

And respectfully, I say: the time to act is now.

## 12. FINAL PLEA TO CHIEF JUSTICE JOHN G. ROBERTS, JR. UNDER RULE 22 AND CONSTITUTIONAL MANDATE

This is not just a filing.

It is a constitutional record of emergency and abandonment.

I now ask you—Chief Justice John G. Roberts, Jr., as Circuit Justice for the Fourth Circuit, and under the powers conferred by:

- Supreme Court Rule 22,

- 28 U.S.C. § 1651(a) (All Writs Act),

- 28 U.S.C. § 2106,

- The First, Fifth, and Fourteenth Amendments,

- And binding Supreme Court precedent—

to act where every lower court has refused.

To protect a disabled veteran where every agency and judge has inflicted harm.

Marbury v. Madison, 5 U.S. 137 (1803):

"It is emphatically the province and duty of the judicial department to say what the law is."

Ex parte Young, 209 U.S. 123 (1908):

"A federal court may enjoin state or federal officers whose actions violate constitutional rights."

Bell v. Hood, 327 U.S. 678 (1946):

"Where federally protected rights have been invaded, it has been the rule that courts will provide a remedy."

I am suffering from untreated suicidal ideation.

Not by chance.

Not by private negligence.

But as a direct result of retaliation by the Department of Veterans Affairs, which pulled me from stabilization care, falsified my records, and eliminated access to lifesaving treatment.

I called them in crisis in April 2024.

They did not screen me.

They did not follow up.

They added lies to my chart and increased medication I could not tolerate.

They erased my existence on paper and labeled me unstable for seeking help.

DeShaney v. Winnebago County, 489 U.S. 189 (1989):

The state has no duty to protect from private harm—but where the state creates vulnerability, constitutional protection applies.

Youngberg v. Romeo, 457 U.S. 307 (1982):

The Constitution imposes a duty to care for individuals the state places in dependency.

I would rather be healing than filing.

But the courts have forced me to become my own emergency response system.

I do not want to litigate. I want to live.

I want to be in vocational rehabilitation, not fighting for legal oxygen.

I want to be in partial hospitalization, not writing briefs at midnight.

I want to care for my husband with dignity, raise my children in stability, and exist within my disability with protection.

Bounds v. Smith, 430 U.S. 817 (1977):

Access to courts must be "adequate, effective, and meaningful."

Tennessee v. Lane, 541 U.S. 509 (2004):

Title II of the ADA ensures equal access to courts and legal remedies for disabled individuals.

And so I come to this Court—the last protector I know.

Haines v. Kerner, 404 U.S. 519 (1972):

Courts must construe pro se pleadings "liberally" and with due regard to the litigant's limitations.

Clarke v. United States, 915 F.2d 699, 707 (D.C. Cir. 1990):

"Courts are not obligated to ignore obvious injustice, even if a litigant fails to label it properly."

Ashcroft v. Iqbal, 556 U.S. 662 (2009):

When government conduct implicates core constitutional guarantees, judicial intervention is not optional—it is necessary.

There is no remedy left through VA.

There is no remedy left through DOJ.

There is no remedy left through the Fourth Circuit.

I have exhausted it all—and the harm has only grown worse.

I am not sorry for my filings.

I am sorry for the length of this one.

I am not an attorney.

I write in pain and in law I have had to learn in crisis.

What I am writing is my own murder—because no one else will record what is being done to me.

Please.

Do not set this aside because it is too long.

If I have forgotten something, I will bring it tomorrow.

If you need documentation, I will print it myself.

But tonight, I am trying to stay alive.

Patsy v. Board of Regents, 457 U.S. 496 (1982):

"Federal courts are the primary guardians of constitutional rights and may act even without exhaustion of other remedies."

Boumediene v. Bush, 553 U.S. 723 (2008):

The Constitution requires that a person have "a meaningful opportunity to challenge the legality of government action."

I am not asking for sympathy.

I am invoking your jurisdiction.

I am asking you to intervene under the Constitution you swore to uphold.

To stop sealed sanctions from being used in secret.

To stop judges from retaliating against my survival.

To stop this system from killing me quietly and legally.

I am not asking for special treatment.

I am asking for equal protection.

And if you do not act, you will be telling every judge, agency, and federal actor involved in my harm that what they did was not just permitted—it was ratified by the highest court in the land.

Please.

Do not let this be my last breath on paper.

Let the record show:

I asked for my life.

I asked for my children's future.

I asked this Court to do what others would not.

And if you act, I will still be here fully. Living.

**CONCLUSION AND PRAYER FOR RELIEF UNDER SUPREME COURT RULE 22**

Petitioner has exhausted every available remedy.

She has contacted members of Congress.

She has reached out to federal agencies.

She has filed administrative complaints and emergency motions in multiple federal courts.

She has been met not with remedy—but with silence, retaliation, and procedural erasure.

Her sealed records have been exposed.

Her trauma has been litigated without mercy.

Her psychiatric history has been weaponized.

And the constitutional harm she suffers is not hypothetical—it is documented, ongoing, and irreparable.

She no longer seeks process.

She seeks protection.

Petitioner now stands before the only Court in the United States with the power to intervene—

and before Chief Justice John G. Roberts, Jr., as Circuit Justice for the Fourth Circuit, under:

- Supreme Court Rule 22,

- 28 U.S.C. § 1651(a) (All Writs Act),

- 28 U.S.C. § 2106,

- And this Court's inherent supervisory authority to prevent irreparable constitutional harm.

She does not come here asking for a favor.

She comes to invoke the Constitution.

She does not come only as a litigant.

She comes as a mother, a caregiver, a disabled veteran, and a survivor—

procedurally erased by the very courts sworn to protect her.

Petitioner incorporates by reference her Emergency Petition for Writ of Mandamus filed with the U.S. Court of Appeals for the Fourth Circuit on April 3, 2025, which remains pending as of this filing. On May 1, 2025, Petitioner submitted a Notice of Substitution of Corrected Filing and Service, which is also attached. Although the corrected documents reflect a May 1 submission date, they amend and clarify filings originally submitted on April 3, 2025.

The Fourth Circuit was fully empowered to take action on the emergency petition based on the original submission, and the correction did not—and does not—preclude judicial intervention. To the extent this Court finds it appropriate to remand or instruct the Fourth Circuit to take immediate action, Petitioner supports any such directive necessary to preserve appellate access, emergency relief, and constitutional oversight.


Accordingly, Petitioner respectfully requests that this Court:

**1. Issue a writ of mandamus or interim emergency order staying all lower court retaliation, and directing the United States District Court for the Eastern District of Virginia to:**

- Permanently seal all filings that contain or reference Petitioner's psychiatric history, trauma disclosures, suicide risk, or protected medical communications;

- Destroy any unsealed copies of trauma records submitted without proper procedural protection, and issue judicial certification of destruction;

- Return to Petitioner all paper filings containing unredacted or exposed psychiatric information.

**2. Order the immediate recusal of Judge Patricia Tolliver Giles and Magistrate Judge Ivan D. Davis from all current and future proceedings involving Petitioner, based on:**

- Their refusal to rule on emergency motions;

- Their failure to cite or enforce federal disability protections; and

- Their retaliatory conduct toward a visibly disabled pro se litigant.

**3. Assume temporary or structural supervisory control over both of Petitioner's Eastern District of Virginia civil cases, which arise from the same continuum of retaliation, disability discrimination, trauma exposure, and judicial inaction.**

Petitioner respectfully requests that this Court:

- Consolidate oversight of both proceedings, or

- Issue a structural protective order to prevent further forum manipulation, fragmentation, or procedural harm.

**4. Declare that the actions of the Eastern District of Virginia and the Department of Veterans Affairs violated:**

- The Fifth Amendment (due process and informational privacy);

- Title II of the Americans with Disabilities Act;

- Section 504 of the Rehabilitation Act; and

- The Fair Housing Act.

**5. Recognize Petitioner's right to proceed under the pseudonym "Jane Doe" in all current and future filings—**

retroactively and prospectively—across all federal jurisdictions,

in order to preserve her privacy, safety, and dignity.

**6. Enjoin all further acts of retaliation or exclusion by federally funded parties, including:**

- The Department of Veterans Affairs,

- Friendship Place,

- Bozzuto Management Company,

- And their legal representatives.

Further order that any future proceedings involving Petitioner be conducted under the supervision of this Court or a neutral Article III tribunal.

**7. Grant any additional declaratory, structural, protective, or equitable relief that this Court deems just and necessary, including but not limited to:**

- Transfer or reassignment of related litigation;

- Emergency sealing and privacy protections;

- Temporary suspension of retaliation by court actors;

- And structural intervention to preserve Petitioner's access to judicial review.

La Buy v. Howes Leather Co., 352 U.S. 249 (1957):

Federal appellate courts may intervene when district courts "fail to provide timely and just review."

Chambers v. NASCO, Inc., 501 U.S. 32 (1991):

Federal courts may issue structural and equitable relief to stop abuse of the judicial process.

Webster v. Doe, 486 U.S. 592 (1988):

Even federal agencies are subject to judicial scrutiny when constitutional rights are at stake.

Tennessee v. Lane, 541 U.S. 509 (2004):

Disabled individuals are entitled to full access to courts and legal protections, including reasonable accommodation and anti-retaliation enforcement.

---

If this Court fails to act, it will not merely deny me relief.

It will send a signal—clearer than any opinion, stronger than any dissent.

It will tell every judge named in these filings that their silence was not error—it was precedent.

It will tell every agency and courtroom that constitutional pain can be reframed as frivolous, and that procedural silence can be used to bury the dying.

It will tell the next disabled veteran, the next mother, the next pro se survivor, that unless you phrase your trauma in perfect legalese, your rights do not exist.

And that chill—the one born from this Court's refusal—will not end with me.

It will send a chill through the judiciary like never before.

It will reach every lower court, every clerk's desk, every future litigant who comes to the law crying for protection.

It will chill the right to life.

It will chill the right to liberty.

It will chill the right to be heard.

It will chill the broken, until all that remains is a system that protects only the powerful and silences the rest.

Skinner v. Oklahoma, 316 U.S. 535 (1942):

Hereditary injustice violates the very core of constitutional liberty.

Loving v. Virginia, 388 U.S. 1 (1967):

Courts cannot codify suffering into law simply because it is inconvenient to challenge it.

Shelby County v. Holder, 570 U.S. 529 (2013):

"We cannot ignore current needs because past protections succeeded."

This chill will not just silence me—it will institutionalize injustice.

And it will say, loud enough for every future survivor to hear:

Even she—who gave the Court everything—was not worthy of constitutional protection.

Let this not be the precedent you set.

Let this not be what your silence ratifies.

Let the chill stop here.

Chief Justice Roberts:

You are not simply a gatekeeper to higher review.

You are the first and last line of constitutional defense for a petitioner in crisis.

Under Supreme Court Rule 22, 28 U.S.C. § 1651(a), and your authority as Circuit Justice, you have the power—and the duty—to act unilaterally when irreparable harm is proven.

This moment does not call for procedural deferral.

It calls for judicial courage.

The law does not require perfection.

It requires intervention when life, liberty, and access to justice are in immediate danger.

This is not an act of mercy.

It is the exercise of Article III judicial power to preserve the Constitution itself.

History will not remember silence.

It will remember who stood when every other bench turned away.

The Constitution gave you the authority.

The crisis gives you the urgency.

Now, the duty is yours.

Jane Doe

Pro Se Petitioner

Proceeding under pseudonym in accordance with constitutional protections, including rights to privacy, safety, and judicial access under the First, Fifth, and Fourteenth Amendments

May 5, 2025